**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

ADITYA BIRLA CHEMICALS USA INC. and PACK PERFECT INC.

Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; EXECUTIVE OFFICE OF THE PRESIDENT; the UNITED STATES OF AMERICA; UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of United States Customs and Border Protection; JAMIESON GREER, in his official capacity as United States Trade Representative; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; HOWARD LUTNICK, in his official capacity as Secretary of Commerce,

Defendants.

Court No. 26-00134-RKE

**UNOPPOSED MOTION FOR**
**INTERVENTION AS A PLAINTIFF-INTERVENOR**

Under the Court's Order entered on September 22, 2026, which lifted the stay in this case (ECF No. 21), 28 U.S.C. § 2631(j), and Rules 7(b) and 24(b) of the Rules of the United States Court of International Trade ("CIT"), the National Seafood Association (formerly known as the National Fisheries Institute[1]) ("National Seafood") moves to intervene as a Plaintiff-Intervenor in this action on behalf of its member-constituents who import seafood and related merchandise from countries that were subject both to tariffs imposed under International Emergency Economic

[1] https://aboutseafood.com/news/nfi-becomes-the-national-seafood-association/

Powers Act ("IEEPA") and to antidumping and/or countervailing duties ("AD/CVD") orders.

As Plaintiffs' Complaint and prior Motion to Lift Stay allege, despite the Supreme Court's February 2026 ruling striking down all tariffs imposed under IEEPA, *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026), a certain subset of importers of record ("IORs"), including Plaintiffs and National Seafood members, cannot obtain refunds of the invalidated IEEPA duties. This is because the guidance promulgated by the U.S. Customs and Border Protection ("CBP"), CSMS # 68340863, categorically excludes IEEPA entries that are also subject to AD/CVD for which the Department of Commerce ("DOC") has issued liquidation instructions that remain pending, no matter how long DOC's AD/CVD process takes. *See* CAPE guidance CSMS # 68340863.

This is so even though the Consolidated Administration and Processing of Entries ("CAPE") system used by the CBP is capable of isolating and calculating the IEEPA-duty amount separately.[2] This exclusion is particularly harmful to National Seafood's members because many operate under distinct AD/CVD orders with liquidation timelines that may extend years into the future. Meanwhile, Commerce continues to deduct unrefunded IEEPA duties from U.S. price in AD proceedings—artificially increasing AD duty rates—because refunds remain "uncertain." The delayed refunds owed to U.S. seafood processors and distributors amount to hundreds of millions of dollars collectively and have been withheld since February 20, 2026, with no identified end date.

[2] *See Atmus Filtration, Inc. v. United States, et al.*, Court No. 26-01259, ECF No. 51 ¶ 14(a) (Decl. of Brandon Lord Responding to March 20, 2026 Court Order) (Ct. Int'l Trade Mar. 31, 2026) ("Entries subject to AD/CVD will be accepted on a CAPE Declaration and the IEEPA duties will be removed, but CBP will not liquidate or process the refund of the IEEPA duties until it receives instructions from DOC to lift the suspension and liquidate the entries."); Consolidated Administration and Processing of Entries (CAPE), 91 Fed. Reg. 42,207, 42,208 (July 8, 2026) (CAPE identifies IEEPA-refundable lines while retaining AD/CVD, Section 232, tax, and fees).

Now that the Court has lifted the stay, National Seafood seeks to intervene to support Plaintiffs' request for an order clarifying that Type 03 IEEPA duties must be refunded and directing CBP to issue those refunds without delay. National Seafood's participation will provide a broader industry perspective regarding how CBP's AD/CVD exclusion policy operates across numerous AD/CVD proceedings, liquidation timelines, and administrative postures. While Plaintiffs' claims arise from a limited set of entries and AD/CVD circumstances, National Seafood's members operate across numerous AD/CVD proceedings involving different merchandise, review cycles, liquidation timelines, and administrative postures. National Seafood is therefore well-positioned to demonstrate that CBP's AD/CVD exclusion policy is a systemic issue affecting importers across multiple proceedings and industries.

Because National Seafood's members operate under numerous AD/CVD orders involving different merchandise, administrative reviews, and liquidation timelines, National Seafood's participation ensures that the Court has a fuller understanding of the practical operation and industry-wide consequences of CBP's AD/CVD exclusion policy. *See Auxin Solar, Inc. v. United States*, 698 F. Supp. 3d 1353 (Ct. Int'l Trade 2024). National Seafood seeks to participate fully in briefing and any proceedings so that the Court may hear directly how the variety of AD/CVD postures represented by National Seafood's members bears on the relief Plaintiffs seek. National Seafood also seeks to participate fully so it can provide the Court with the perspective and experience of its importer-members regarding the practical operation and consequences of CBP's AD/CVD refund exclusion.

For these reasons, National Seafood asks the Court to grant this Motion to intervene.

## ARGUMENT

### I. National Seafood Meets the Requirements for Permissive Intervention

Here, National Seafood meets the requirements for permissive intervention. Intervention in the CIT is governed by 28 U.S.C. § 2631(j) and CIT Rule 24(b). Section 2631(j) allows a person who would be "adversely affected or aggrieved" by a CIT decision to intervene by leave of court, subject to statutory exceptions, and requires the court to consider undue delay or prejudice where intervention is by leave. Rule 24(b) likewise provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."

In cases brought under 28 U.S.C. § 1581(i), like Plaintiffs', the Court considers whether the proposed intervenor would be adversely affected or aggrieved, whether the proposed claim or defense shares a common question of law or fact with the main action, whether the motion is timely, and whether intervention would unduly delay or prejudice the existing parties. *See, e.g.*, *Eregli Demir Ve Celik Fabrikalari T.A.S. v. United States Int'l Trade Comm'n*, 639 F. Supp. 3d 1245, 1257 (Ct. Int'l Trade 2023). The "adversely affected or aggrieved" language is construed broadly in CIT intervention cases. *See, e.g.*, *Auxin Solar*, 698 F. Supp. 3d at 1379. Timeliness is assessed under all the circumstances, including when the movant knew or should have known of its interest, prejudice to existing parties, prejudice to the movant if intervention is denied, and unusual circumstances. *See id.*

Consistent with that broad standard, courts have regularly permitted participation by industry associations and other representative organizations whose members are directly affected by the administration of the trade laws. Such participation is particularly valuable where the organization can provide a broader industry-wide perspective regarding the practical effects of the

challenged government action and the scope of affected parties.

Here, National Seafood members would be directly and adversely affected by a decision favoring Defendants. While Plaintiffs' claims arise from a more limited set of entries and AD/CVD circumstances, National Seafood's members operate under numerous AD/CVD orders covering seafood and related merchandise, each carrying its own liquidation timeline before the DOC. A ruling in this action that does not account for this range of postures risks leaving a substantial portion of similarly situated importers without the clarity Plaintiffs seek for themselves. National Seafood's members therefore share the same adverse effect as Plaintiffs: continued and potentially years-long withholding of unlawfully collected IEEPA duties. They also illustrate the breadth of circumstances the Court's ruling will necessarily reach (not to mention the additional benefit of supporting judicial economy).

National Seafood's participation will provide a broader perspective than that presented by the existing parties, as no current party represents the broader perspective of importers whose entries are subject to a wide variety of AD/CVD orders, review cycles, liquidation timelines, and refund exposures. National Seafood's participation will therefore materially assist the Court in evaluating the practical operation of CBP's policy and the implementation of relief without expanding the claims, legal issues, or relief sought in this action.

Both Plaintiffs and National Seafood's members present the identical legal question of whether CBP's categorical exclusion of IEEPA duties on entries with pending AD/CVD liquidation instructions—regardless of the length or status of DOC's AD/CVD process—is a lawful basis for withholding refunds required by *Learning Resources*. Resolving that common question will govern the refund rights of Plaintiffs and National Seafood's members alike, notwithstanding differences in the particular AD/CVD orders under which their entries fall. *See*

*also PrimeSource Building Products, Inc. v. United States*, 494 F. Supp. 3d 1307, 1334 n.37 (Ct. Int'l Trade 2021) (Baker, J., concurring) (noting that intervention "is a mechanism for consolidating in a single action claims or defenses that might otherwise be litigated separately . . . [and] offers a streamlined mechanism for an outside party to join pending litigation rather than filing a separate lawsuit and seeking consolidation.").

Intervention here would impose no cognizable prejudice. National Seafood does not seek to expand the claims presented, raise independent causes of action, alter existing deadlines, pursue additional discovery, or otherwise disrupt the posture of the litigation. National Seafood seeks only to participate with respect to the legal questions already before the Court concerning the continued withholding of IEEPA-duty refunds on entries subject to pending AD/CVD liquidation instructions. National Seafood seeks the same type of relief Plaintiffs request, but hopes to buttress those existing claims by supplying the additional perspective of its members' affected entries. Thus, National Seafood's participation will reinforce, through the additional perspective of its membership, the same legal and factual questions already before the Court. Denying intervention, by contrast, would risk piecemeal litigation of the identical CAPE-exclusion question in a separate action, contrary to the interest in judicial economy that permissive intervention is meant to serve.

Finally, National Seafood's Motion is timely under all relevant circumstances. The Court lifted the stay on September 22, 2026 and National Seafood moved the next day. The litigation remains at an early stage on the issues presented by Plaintiffs' Motion to Lift Stay, and National Seafood's participation will not require modification of any scheduling order, additional discovery, or supplemental merits claims. Moreover, both Plaintiffs and Defendants are unopposed to National Seafood's intervention. Under these circumstances, intervention will neither delay these

proceedings nor prejudice any existing party.

## II. <u>National Seafood Has Associational Standing</u>

An association has standing on behalf of its members when (1) at least one member would have standing to sue in its own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim nor the relief requires the participation of individual members. *See Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *accord Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

Here, a number of National Seafood members are IORs that paid IEEPA duties on entries also subject to AD/CVD orders and have been denied CAPE refunds solely because of the AD/CVD exclusion. Those members' injury–continued withholding of unlawfully collected funds–is concrete, particularized, traceable to CBP's policy, and redressable by the declaratory and injunctive relief sought. National Seafood's mission of promoting and supporting trade in the seafood industry squarely encompasses a challenge to the delayed refund of IEEPA duties paid by its importer members.

National Seafood seeks only declaratory and injunctive relief directed at CBP's generally applicable policy, not individualized money judgments. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 287–90 (1986) (association may pursue claims presenting legal questions where member-specific determinations can be resolved by the responsible agency after relief is entered); *United Food & Com. Workers Union Local 751*

*v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996) (individual participation "not normally necessary" where an association seeks prospective or injunctive relief).

National Seafood has thus demonstrated associational standing.

**CONCLUSION**

In accordance with CIT Rule 7(f), undersigned counsel to National Seafood consulted the parties to this action regarding National Seafood's intervention in this matter. On September 22, 2026 at 1:42 p.m., Attorney David Craven, counsel for Plaintiffs, stated that Plaintiffs consent. On September 24, 2026, at 8:06 a.m., Mathias Rabinovitch, counsel for Defendants, stated that Defendants defer to this Court's discretion. The Court should therefore grant National Seafood's motion to intervene and permit National Seafood to participate in briefing and any subsequent proceedings in this case.

Dated: September 24, 2026

Respectfully submitted,

/s/ Ashley Akers

Ashley Akers
HOLLAND & KNIGHT LLP
800 17th Street, NW, Suite 1100
Washington, DC 20006
Tel. (202) 441-5870
Ashley.akers@hklaw.com

*Counsel for Proposed Plaintiff-Intervenor*