Before Hon. Richard K. Eaton, Sr. Judge
UNITED STATES COURT OF INTERNATIONAL TRADE

ADITYA BIRLA CHEMICALS USA INC and
PACK PERFECT INC

Plaintiffs,

v. Court No. 26-00134

DONALD J. TRUMP, *in his official capacity as President of the United States*; EXECUTIVE OFFICE OF THE PRESIDENT; the UNITED STATES OF AMERICA; UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, *in his official capacity as Commissioner of United States Customs and Border Protection;* JAMIESON GREER, *in his official capacity as United States Trade Representative*; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; Howard Lutnick, *in his official capacity as Secretary of Commerce*,

Defendants.

**Motion to Order Refund of IEEPA Duties on Type 03 Entries**

Plaintiffs Aditya Birla Chemicals Usa Inc and Pack Perfect Inc, by and through their attorneys hereby move for the issuance of an order directing U.S. Customs and Border Protection to establish a CAPE 4 process which would refund with interest the IEEPA duties deposited on type 03 entries without waiting for liquidation of the underlying entries. Plaintiffs also adopt by reference Plaintiff-Intervenor National Seafood Association, Inc's motion for an order directing refund of invalidated IEEPA duties on type 03 entries and incorporate the same in this motion.

Pursuant to Rule 81 of the Rules of the U.S. Court of International Trade, plaintiff supplies the following:

Table of Contents

TABLE OF CONTENTS

I. Questions Presented ....................3
II. Statement of Facts ....................3
III. Summary of Argument ....................5

IV. Argument ........................................................................................................6

1. There is no issue with respect to ultimate recovery ....................................6

2. The U.S. Court of International Trade has the Power Sitting in Equity to Issue Orders Enforcing its Determinations ..............................................................6

3. Equitable Principles Compel Issuance of the Requested Order..................7

a. Maxims of Equity ......................................................................7

b. Equity at the Court of International Trade ............................................8

4. Plaintiffs are suffering an irreparable injury ..............................................9

i. Delayed Refunds Impact Antidumping Duty Calculations ...........10

ii. Delayed Refunds interfere with Relations between the importers and their direct and ultimate customers ................................................................10

5. Monetary Damages are Insufficient..........................................................10

6. Likelihood of Success and Balancing of Hardships .................................11

7. Public Interest is Served by the Issuance of the Refunds ..........................11

V. Request for Relief ..............................................................................11

Table of Authorities

Court Cases:

*American Air Parcel Forwarding Co. v. US*, 515 F.Supp. 47(Ct. Int'l Trade 1981) ..................6, 8

*Amoco Production Co.* v. *Gambell,* 480 U. S. 531 (1987) ............................................................9

*Ebay Inc. v. Mercexchange LLC*, 547 U.S. 388 (2006)..................................................................8

*Hitachi Energy USA Inc. v. United States* (Ct. Int'l Trade No. 16-00054) ....................................5

*La Molisana v. United States* (Ct. Int'l Trade No. 21-00291) .......................................................5

*La Molisana v. United States* (Fed. Cir. Ct. No. 2023-2060) ........................................................5

*Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025))........................................... 3, 6

*Shanghai Tainai Bearing Co., Ltd. v. United States* (Ct. Int'l Trade No. 22-00038)......................*5*

*Shanghai Tainai Bearing Co., Ltd. v. United States* (Fed. Cir Ct. No. 22-00038*)* ..........................*5*

*Weinberger* v. *Romero-Barcelo,* 456 U. S. 305 (1982) .................................................................9

*YC Rubber Co. (North America) LLC. v. United States* (Int'l Trade Cons. Ct. No. 19-00069) ......5

Administrative:

*Issues and Decision Memorandum for the Final Determination in the Less-Than-Fair-Value Investigation of High Purity Dissolving Pulp from Brazil,* A-351-866 (October 9, 2026) *.4*

*Decision Memorandum for the Preliminary Results of the Administrative Review of the Antidumping Duty Order on Certain Paper Shopping Bags from Colombia,* A-301-805 (October 1, 2026) 4

*Silicon Metal from Australia: Final Affirmative Determination of Sales at Less Than Fair Value*, 91 Fed. Reg. 39593 (June 30, 2026) ....................4

*Decision Memorandum for the Preliminary Results of the Administrative Review of the Antidumping Duty Order of Xanthan Gum from the People's Republic of China; 2024-2025*, A-570-985 (October 7, 2026) ....................4

Statutory:

28 U.S.C. 251 (a) ....................6

28 U.S.C. 1585....................6, 11

28 U.S.C. 2643(c) (1)....................6, 11

Other:

*A Treatise on Equity Jurisprudence* by John Norton Pomeroy (Bancroft-Whitney Co., 1905)......7

*Customs Court Act of 1980* (PL 96-417, 94 Stat. 1727) ....................6

## ***I. Questions Presented***

A. Whether the Court should exercise its powers as a Court sitting in equity to order CBP to establish a CAPE 4 process providing for the refund of IEEPA duties collected on type 03 entries without waiting for liquidation.

## ***II. Statement of Facts***

In the matter before the Court, the following are relevant facts:

On January 7, 2026 plaintiffs filed their court case challenging the constitutionality of the IEEPA duties imposed on imports. Plaintiffs Aditya Birla and Pack Perfect Inc have certain entries which included IEEPA duties and which were class 3 entries and subject to antidumping duties.

On January 9, 2026 the Court stayed the proceedings pending resolution of the issues before the Courts.

On February 20, 2026 the U.S. Supreme Court issued its opinion finding that the IEEPA duties were unlawful holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

Iin response to the decision of the Supreme Court, the Court of International Trade has issued an ongoing series of orders directing that CBP refund such IEEPA duties.

On April 20, 2026 the U.S. Customs Service launched the CAPE system, setting up a still evolving administrative mechanism for the issuance of refunds.

On July 14, 2026 this matter was assigned to Judge Richard K. Eaton

The CAPE system has not yet established procedures for the refund of IEEPA duties deposited on Type 3 entries. It is unclear whether or not such duties will be refunded prior to liquidation.

The Department of Commerce in the issues and decisions memorandum issued in connection with *Silicon Metal from Australia: Final Affirmative Determination of Sales at Less Than Fair Value*, 91 Fed. Reg. 39593 (June 30, 2026) stated that it is presently deducting IEEPA duties from U.S. Price in Antidumping Duty Administrative Reviews thereby increasing the Antidumping Duty rate. The Department stated:

> However, pursuant to section 772(c)(2)(A) of the Act, Commerce reduces CEP by any "the amount, if included in such price, of any … United States import duties, which are incident to bringing the subject merchandise from the original place of shipment in the exporting country to the place delivery in the United States." Absent evidence that Simcoa received a refund for this charge, Commerce is unable to make a determination regarding an event that *might* occur in the future, nor is Commerce relieved from statutory direction to deduct import duties from CEP. *Silicon Metal from Australia; Issues and Decisions Memorandum* at 17 (Emphasis in Original)

The Department has repeated this action in multiple actions including, but not limited to, the following:

In *Xanthan Gum* the Department "made deductions from the starting price where appropriate for movement expenses (i.e., foreign movement expenses, international movement expenses, U.S. duties, section 301 duties, IEEPA duties and U.S. movement expenses), in accordance with section 772(c)(2)(A) of the Act." See *Decision Memorandum for the Preliminary Results of the Administrative Review of the Antidumping Duty Order of Xanthan Gum from the People's Republic of China; 2024-2025*, A-570-985 (October 7, 2026)

In *High Purity Dissolving Pulp* the Department stated: "For the final determination, we have continued to deduct Bracell's IEEPA tariffs, reported in the field USDUTY2U, in our margin calculations, consistent with *Silicon Metal from Australia*." See *Issues and Decision Memorandum for the Final Determination in the Less-Than-Fair-Value Investigation of High Purity Dissolving Pulp from Brazil, A-351-866 (October 9, 2026)*

In *Paper Bags from Columbia* the Department stated: "We have included Ditar's duty charges related to the International Emergency Economic Powers Act (IEEPA) tariffs in the U.S. customs duties field and have deducted them in order to calculate U.S. net price. Regardless of the legality of the IEEPA tariffs, the record indicates that these duty amounts were included in the U.S. price at the time of sale Moreover, any potential refund of the IEEPA tariffs will be received by the importer, and regardless of whether the respondent was the importer of record, there is necessarily a timing difference between when the U.S. sale was originally made and any potential refund of the tariffs. Further, there is no evidence on the record demonstrating that any refund Ditar may have received was passed along to its U.S. customers. See *Decision Memorandum for the Preliminary Results of the Administrative Review of the Antidumping Duty Order on Certain Paper Shopping Bags from Colombia,* A-301-805 (October 1, 2026).

The Liquidation of Entries subject to antidumping and countervailing duties can be extended for many years. The following are few examples.

Certain entries subject to *Anti-friction Bearings from the People's Republic of China (A-570-601)* for the

2019/2020 period of review, which covers entries made from June 1, 2019 to May 31, 2020 is subject to the Court case in *Shanghai Tainai Bearing Co., Ltd. v. United States (Ct. Int'l Trade No. 22-00038)* and the related appeal to the Federal Circuit (Fed. Cir. Ct. No. 2025-1405), remain unliquidated, and have been in such status for more than 7 years. At this time, the Federal Circuit has not yet set oral argument and thus the liquidation will be extended for a significant period of time.

Certain entries subject to *Certain Pasta from Italy (A-475-818)* for the 2018/2019 period of review, which covers entries made from July 1, 2018 to June 30, 2019 is subject to the Court case in *La Molisana v. United States* (Ct. No. 21-00291) and the related appeal to the Federal Circuit (Ct. No. 2023-2060), remain unliquidated for more than 8 years. While this matter is nearing its conclusion, liquidations have been extended for an extended period of time.

Certain entries subject to *Large Power Transformers from Korea (A-580-867)* for the 2013/2014 period of review covers entries made from August 1, 2013 to July 31, 2014 were subject to the Court case in *Hitachi Energy USA Inc. v. United States* (Ct. No. 16-00054). Liquidation instructions were not issued until December 8, 2023. In other words, liquidation took in excess of 10 years.

Certain entries subject to *Passenger Vehicle and Light Truck Tires from China (A-570-016*) for the 2016/2017 period of review covers entries made from August 1, 2016 to July 31, 2017 were subject to the Court case in *YC Rubber Co. (North America) LLC. v. United States (Cons. Ct. No. 19-00069).* This matter has still not been resolved and is subject to Appeal 2026-1788 which was docketed on May 7, 2026. In other words, liquidation will take in excess of 10 years.

## ***III. Summary of Argument***

The matter before the Court is not complex. There can be no dispute that the IEEPA duties deposited on the Type 03 entries are unconstitutional and will be refunded. This not an issue as to whether these duties should be refunded, only the timing of such refunds. Furthermore, there also can be no dispute that jurisdiction is proper before the Court of International Trade and that the Court of International Trade has been delegated the power to sit as a Court in equity. Under long established principles, it is also clear that the CIT not only can act, but should act. The delay of refunds of IEEPA duties deposited on type 03 entries is working permanent and irreparable harm to the importers. Monetary damages in the form of a refund of these duties will not remedy the harm as long as they are badly delayed. The hardship on the United States is slight, the United States is simply being asked to act as they are already under a legal compulsion to act and the harm to the importers significantly outweighs any such harm. As the eventual recovery of these IEEPA duties is inevitable, and as a portion of such duties would run to the public, such recovery is also in the public interest.

## *IV. Argument*

### *1. There is no issue with respect to ultimate recovery*

There is no issue with respect to ultimate recovery. The U.S. Supreme Court has declared that the IEEPA duties were imposed unconstitutionally, and the U.S. Court of International Trade has clearly stated that all such duties must be refunded. The United States is now under an affirmative obligation to refund such unlawfully collected monies. The issue is not the ultimate recovery of such duties, it is the timing of such recovery. This is a very important factor to be considered in deciding whether the Court can act, using its powers in equity, to enforce its judgment. Critically, this matter is not an Antidumping Duty or Countervailing Duty challenge and the issues with respect to the calculation of the margin are not directly before the Court. This is a simple issue over which there is no dispute as to ultimate recover.

### *2. The U.S. Court of International Trade has the Power Sitting in Equity to Issue Orders Enforcing its Determinations*

The U.S. Court of International Trade was established under article III of the Constitution of the United States by the *Customs Court Act of 1980* (PL 96-417, 94 Stat. 1727.) (28 U.S.C. 251 (a)). This same statute expressly states that "{t}he Court of International Trade shall possess **all the powers** in law and **equity** of, or as conferred by statute upon, a district court of the United States.". (28 U.S.C. 1585). In other words, while the CIT's national jurisdiction is limited to Civil matters, its ability to fashion a remedy is not limited. As noted by the Court of International Trade in *American Air Parcel Forwarding Co. v. US*, 515 F.Supp. 47(Ct. Int'l Trade 1981), if the Court has subject matter jurisdiction, it has the power to use its powers in equity. The Court stated:

> On the court's authority to grant an equitable remedy, it must be noted that the general powers of the federal courts, when sitting as courts of equity, can only be exercised in cases within their subject matter jurisdiction as defined by Congress. *Sprague v. Ticonic Bank,* 307 U.S. 161 (1939); *Mason v. United States,* 260 U.S. 545 (1923). By the Customs Courts Act of 1980, Congress has clearly defined this court's subject matter jurisdiction and remedial powers. Congress has thereby conferred upon this court the statutory authority and power to grant the equitable relief requested. **Since the court is expressly authorized to grant an equitable remedy, it may grant plaintiff the requested relief**. 28 U.S.C. § 1585; 28 U.S.C. § 2643(c)(1). Therefore, since the court has jurisdiction, there is no question as to its authority or power to do equity in the case at bar.
> *American Air* at 51-52. (Emphasis Added)

The issue as to whether this Court has jurisdiction is settled. In *Learning Resources, Inc. et. al. v. Trump* 146 S.Ct. 628 (2026) the U.S. Supreme Court upheld a challenge to jurisdiction finding that the CIT had jurisdiction for the challenge to the IEEPA duties. In this matter, as jurisdiction is proper before the Court of International Trade, the Court also has the authority to use its equitable powers. The Court should do so under the facts before the Court.

### *3. Equitable Principles Compel Issuance of the Requested Order*

#### *a. Maxims of Equity*

Equity is long rooted in U.S. Jurisprudence. A primary treatise on equity is *A Treatise on Equity Jurisprudence* by John Norton Pomeroy (Bancroft-Whitney Company, 1905) ("Pomeroy on Equity") which details the nature of equity powers in U.S. Courts. Chapter I, Fundamental Principles or Maxims of Equity details these fundamental principles. Pomeroy states:

> 363. List of Maxims.— Those principles which are so fundamental and essential that they may with propriety be termed the maxims of equity are the following: Equity regards that as done which ought to be done; equity looks to the intent, rather than to thè form; he who seeks equity must do equity; he who comes into equity must come with clean hands; equality is equity; where there are equal equities, the first in time shall prevail; where there is equal equity, the law must prevail; equity aids the vigilant, not those who slumber on their rights, or *Vigilantibus non dormientibus, aquitas subvenit;* equity imputes an intention to fulfill an obligation; equity will not suffer a wrong without a remedy; and equity follows the law. It must not be supposed that all these maxims are equally important, or that all have been equally fruitful in the development of doctrines and rules; but it is not an exaggeration to say that he who has grasped them all with a clear comprehension of their full meaning and effects has already obtained an insight into whatever is essential and distinctive in the system of equity jurisprudence, and has found the explanation of its peculiar doctrines and rules.
> Pomeroy on Equity at 601

The most relevant of these, for purposes of this matter, are:

- Equity regards that as done which ought to be done;
- Equity looks to the intent, rather than to the form;
- He who seeks equity must do equity;
- He who comes into equity must come with clean hands; and
- Equity will not suffer a wrong without a remedy.

The application of each of these to the facts at question satisfy these principles.

1. A Refund Should be Provided

Equity regards that as done, which ought to be done. In this matter, as discussed above, there is no issue that these refunds should not be ultimately made. These refunds ought to be done, and thus under equity, the should be treated as done.

2. The Intent of the Courts is That the Money Should be Refunded

The U.S. Court of International Trade, the U.S. Court of Appeals for the Federal Circuit, and the U.S. Supreme Court has made it clear that the IEEPA duties were not only unlawful, they were unconstitutional, and should be refunded. The Courts did not differentiate between the types of entry. CBP, in issuing refunds, in contrast, has focused on the "form" of the refunds (limiting refunds on numerous procedural grounds) and ignored the stated intent of the Court, that a refund should be issued. The Court should take into account the intent of the orders finding the IEEPA tariffs and should reject the attempt to place "form" over substance.

3. The Plaintiffs have Acted Equitably

The plaintiffs have acted equitably. Patiently waiting for the issuance of liquidations until special circumstances as detailed in Section 4(a) below arose. Plaintiffs did not seek immediate compliance and asked to be placed in front of the other claimants. Plaintiffs patiently waited to see how this matter might be resolved. In contrast, Defendant's have not acted equitably, but rather have created "unique" theories which would effectively deprive plaintiffs of their refunds by artificially increasing other duties and by creating a situation where the artificial increase cannot be avoided.

4. Plaintiffs have Clean Hands

The plaintiffs have clean hands. Plaintiffs have deposited the IEEPA duties at the time of entry and have followed all of the proper legal procedures to challenge these duties. Plaintiffs have not stood back without filing a suit and waiting for others to litigate all of the issues.

5. Equity will not suffer a wrong without a remedy

As detailed below, absent actions by this Court, the plaintiffs, and those similarly situated, will be subject to serious and irreparable harm. This is not a case of "mere" money damages, but rather there are multiple long term irreparable damages which cannot be remedied by the mere ordering of a refund with interest. The issuance of an order directing a prompt refund, in contrast, will offset or prevent many of these irreparable damages. There is clearly a wrong, and there must be a remedy.

In sum, plaintiffs have established under the maxims of equity that they should be entitled to the requested relief.

***b. Equity at the Court of International Trade***

These equitable maxims are also reflected in the primary use of equity at the Court of International Trade. The primary use of equitable powers at the CIT is the creation and enforcement of injunctions. In determining whether or not to issue an injunction – i.e. invoke equity powers – the Court has established four basic factors. They are:

1. Threat of Immediate Irreparable Harm
2. The Public Interest would be better served by the issuance of the injunction
3. The likelihood of success on the merits
4. The balancing of hardship favors the plaintiffs.

*American Air Parcel Forwarding Co. v. US*, 515 F.Supp. 47, 52 (Ct. Int'l Trade 1981).

Such principles have been ratified by the U.S. Supreme Court in *Ebay Inc. v. Mercexchange LLC*, 547 U.S. 388 (2006) which reiterated the "four-factor test historically employed by courts of equity". *Ebay* at 390. The Supreme Court stated:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that

> it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. See, *e. g., Weinberger* v. *Romero-Barcelo,* 456 U. S. 305, 311-313 (1982); *Amoco Production Co.* v. *Gambell,* 480 U. S. 531, 542 (1987).

Each of these factors support the relief sought by plaintiffs.

4. Plaintiffs are suffering an irreparable injury.

While, in theory, the IEEPA duties can be refunded with interest, the amount of duties being collected is not the only harm, and a delayed refund, even with interest, does not remedy these other injuries. These other injuries are irreparable and create injuries which are measured in years.

a. Delayed Refunds Impact Antidumping Duty Calculations

The delayed refunds significantly impact the calculation of antidumping duties and create artificial and inflated margins. The Department of Commerce, as set forth in the enumeration of relevant facts, is consistently deducting from U.S. price in antidumping duty calculations the amount of IEEPA duties deposited, notwithstanding that such duties are unlawful. Under the Department construction, absent a refund, such duties will continue to be deducted. But if IEEPA duties can only be refunded upon liquidation, and as liquidation of entries subject to antidumping and countervailing duties can only occur after the calculation of the margins and resolution of any Court challenges, the failure to refund necessarily results in increased duties and deposit rates hampering the ability of exporters and producers to compete. This is an irresolvable logic trap and in essence, the IEEPA duty will continue to persist in the form of an artificially increased AD duty. Furthermore, such refusal to refund will necessarily result in the filing of multiple court cases (essentially one case for each administrative review) with the unreimbursed cost of such actions. The failure to promptly refund creates an economic harm which goes beyond mere money and requires the commitment of money to fund litigation and to expend internal resources to prepare such Court filings.

This is further aggravated by the fact that litigation challenging Anti-dumping and Countervailing duty actions can take years and liquidation cannot occur until such actions are resolved. The suggestion has been made that it is at most a 2 -3 year cycle. While this might be “the ordinary” ‘timeline, a much longer time line is not out of line. The “delay” consists at a minimum, of the time that must expired before it is known whether or not a review is requested. If a review is requested, the administrative process will take more than one year. If the review goes to the Court of International Trade (without a remand) another year is added to the process, and if this matter is then appealed to the Court of Appeals for the Federal Circuit, yet another year is added to the process. Adding in remands and importers are looking at a minimum of 4 to 5 years. And in certain cases, As discussed above, such actions can take 10 or more years, and during the interim period, the importers are

subject to artificially inflated duties and the loss of access to significant amounts of capital.

b. Delayed Refunds interfere with Relations between the importers and their direct and ultimate customers

The failure to promptly refund these IEEPA duties also interferes with relationships between importers and their U.S. customers. The U.S. customers, who in turn face demands from their retail customers, have demanded refunds of some or all of the IEEPA duties from the importers. This is reflected in recent litigation at the Court of International Trade where the customers of the importers have sought to participate in the refund process. While such efforts have not been successful to date at the CIT, this is strong evidence of the concerns of the Customers of the importers. The U.S. customers have read the news reports and know that the duties have been struck down. The retail customers of the U.S. customers are similarly aware of the illegality of these duties. They want their money and do not wish to wait, nor do the intermediaries want to be perceived as an entity that is "ripping off" these ultimate customers. In the case of type 03 entries, the U.S. customers are already paying "enhanced" duties, and these IEEPA duties increase the pressure. As such, the U.S. customers are demanding a refund based on the IEEPA duties and do not want the importers to wait for the refund. The importers are impaled on Morton's Fork and left with the choice of potentially alienating their customers with untoward delays or having to choose to essentially fund a portion of the IEEPA duties twice – once for the duties deposited and a second time to refund their customers. This is a harm which cannot be remedied with mere money.

5. Monetary Damages are Insufficient

Delayed refunds, even with interest, are insufficient to remedy the injury. Even if these refunds are made, with interest, other harm will remain unremedied. As discussed above, such delayed refunds will also impact the calculation of antidumping duties resulting with artificially inflated duties. Such artificially inflated duties can only be addressed by the filing of an additional Court case. The costs and expenses of filing such a Court will not be offset by a refund of the IEEPA duties, even with interest. Such additional costs will have to be borne by the importer. Monetary damages in the form of a refund, even with interest, would not be sufficient to offset the injury.

Secondly, the delayed refunds, particularly if over a series of years, would create significant friction between both the importer and its customer and between its customer and the retail customer. Delays of even a few years, let alone delays of many years, would create unfair perceptions in the minds of the customers that the importer is seeking, in some fashion, to "rip off" its customers. The perception of the brand would be damaged. Monetary damages would not eliminate the harm which would arise from perception.

Thirdly, competition does not exist in a vacuum. Antidumping duties do not apply across the board to all products, but rather are Country and product specific. (And to some extent even producer/exporter specific).

Business compete with both US and foreign competitors from other nations. The purpose of Antidumping is to equalize the field, but by delaying the IEEPA refunds and by artificially inflating dumping margins, the field is not equal and places otherwise fair traders from multiple countries on an unequal footing.

6. Likelihood of Success and Balancing of Hardships

This factor comes down strongly in favor of plaintiffs. The Supreme Court and the Court of International Trade have unequivocally stated that these IEEPA duties collected at the time of entry are unconstitutional and must be refunded. The probability of success is essentially 100%. In a similar fashion, as discussed above with respect to irreparable injury, the delayed refund process creates a growing and ongoing hardship on plaintiffs. In contrast, defendant is merely being required to create a process which it will be ultimately be required to create in any event. The hardship on defendant is minimal, and on information and belief, the defendant has already obtained a list of these type 03 entries and the amounts of IEEPA duties collected on such duties. All that is required is requiring a CAPE 4 filing and certification from counsel that the importer has gone to Court to challenge the IEEPA duties, review of the data already gathered by defendant, and the issuance of a check or other form of payment to the plaintiffs. These are neither unique nor new burdens on CBP. The hardship is minimal.

7. Public Interest is Served by the Issuance of the Refunds

As discussed above, the U.S. customers, and ultimately the retail customers will be the ultimate recipient of a significant portion of the refunds. In other words, the money will ultimately go to the public. This is the *sina qua non* of the public interest -- providing monies to the public that has been improperly withheld from the public. The public interest is thus served by a refund process.

## *V. Request for Relief*

Plaintiffs understand that CBP faces some burdens in processing these refunds. However, on information and belief, CBP has managed to automate much of the refund process and is not required to manually review each entry or submission. As such, the Court should set a reasonable period of time for CBP to create a CAPE 4 process and to require that refunds timely requested be issued by a date certain. The Court should direct the United States to supply the Court with a concrete implementation plan, deadlines and entry-level reporting such that Type 03 importers are not left in an indefinite later-development category.

The Court should also declare that pursuant to 28 U.S.C. 2643(c)(1) and 1585 that CBP may not withhold the IEEPA component of Type 03 entries pending AD/CVD liquidations and that the Court's order supplies CBP the authority of issue those refunds and declare that Type 03 entries fall within the existing obligations set forth in the Court's refund orders.

Finally, the Court should award such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ David Craven
David Craven
Craven Trade Law LLC
3744 N Ashland
Chicago, IL 60613
773 709-8506

*Counsel to* Aditya Birla Chemicals Usa Inc and Pack Perfect Inc.

Dated: October 19, 2026