**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

ADITYA BIRLA CHEMICALS USA INC. and PACK PERFECT INC.

Plaintiffs,

and

THE NATIONAL SEAFOOD ASSOCIATION,

Plaintiff-Intervenor,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; EXECUTIVE OFFICE OF THE PRESIDENT; the UNITED STATES OF AMERICA; UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of United States Customs and Border Protection; JAMIESON GREER, in his official capacity as United States Trade Representative; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; HOWARD LUTNICK, in his official capacity as Secretary of Commerce,

Defendants.

Court No. 26-00134-RKE

Before: Richard K. Eaton, Judge

**PLAINTIFF-INTERVENOR NATIONAL SEAFOOD ASSOCIATION, INC.'S MOTION FOR AN ORDER DIRECTING REFUND OF INVALIDATED IEEPA DUTIES ON TYPE 03 ENTRIES**

# TABLE OF CONTENTS

Page


BACKGROUND ....................................................................................................... 2

A. CBP Built the CAPE System to Return Unlawful IEEPA Duties But Delays the Return for Type 03 Entries. ........................................................................ 2

B. CAPE Identifies and Segregates the IEEPA Component from Other Duty Liabilities. ...... 4

JURISDICTION ....................................................................................................... 5

A. The Court Has Jurisdiction Under Section 1581(i) to Review CBP's Administration of IEEPA Refunds and to Grant National Seafood's Requested Relief. ........................... 5

B. The Government Cannot Recast this Section 1581(i) Refund-Administration Case as a Commerce AD/CVD Challenge. ...................................................................... 6

ARGUMENT ............................................................................................................ 7

A. The Court's Existing Refund Orders Already Require Refund of the IEEPA Component of Type 03 Entries. ....................................................................... 8

B. CBP's CAPE System Already Segregates the IEEPA Component and Leaves AD/CVD Liability Untouched, So the Government's Administrative Concerns Are Without Merit. ............................................................................................. 9

C. CBP Has No Statutory Authority to Retain the Separate IEEPA Funds Until Full Liquidation. ................................................................................................. 10

D. Administrative Burden and CAPE Phasing Do Not Justify the Indefinite Withholding of Unlawfully Collected Duties. ................................................................. 13

1. The Plaintiffs' Legal Right to Prompt Refunds of *All* IEEPA Tariffs Plainly Outweighs the Government's Misplaced Administrative Burden Argument. ....... 13

2. The Indefinite Delay CBP Suggests Is Inherently Unreasonable. ........................ 16

3. CBP's Categorical Delay of the Entries at Issue Is Overbroad and Arbitrary. ...... 20

E. The Court Has Broad Authority to Order National Seafood's Tailored, Uniform Remedial Relief. ............................................................................................ 21

CONCLUSION & RELIEF REQUESTED .................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afghan & Iraqi Allies v. Blinken*,
103 F.4th 807 (D.C. Cir. 2024) ....15

*Am. Signature, Inc. v. United States*,
598 F.3d 816 (Fed. Cir. 2010) ....22

*AM/NS Calvert LLC v. United States*,
654 F. Supp. 3d 1324 (Ct. Int'l Trade 2023) ....12, 22

*In re Amazon Tariff Litig.*,
MDL No. 3197 (J.P.M.L. Oct. 2, 2026) ....19

*Atmus Filtration, Inc. v. United States*,
No. 26-01259, 2026 WL 679285 (Ct. Int'l Trade Mar. 5, 2026) ....6, 8, 22

*Budd Co., Ry. Div. v. United States*, 1 CIT 175 (1981) ....9

*Bull v. United States*,
295 U.S. 247 (1935) ....14

*Castelazo & Assocs. v. United States*,
126 F.3d 1460 (Fed. Cir. 1997) ....11

*Cobell v. Norton*,
240 F.3d 1081 (D.C. Cir. 2001) ....14, 15, 16, 20

*Consol. Bearings Co. v. United States*,
348 F.3d 997 (Fed. Cir. 2003) ....6, 7

*In re Core Commc'ns, Inc.*,
531 F.3d 849 (D.C. Cir. 2008) ....16

*Cutler v. Hayes*,
818 F.2d 879 (D.C. Cir. 1987) ....15, 17

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
655 F.3d 1337 (Fed. Cir. 2011) ....5

*Euro-Notions Florida, Inc. v. United States*, No. 25-00595 (Ct. Int'l Trade) ....13

*Freestyle World, Inc. v. United States*, No. 26-01088 (Ct. Int'l Trade Oct. 8, 2026) ....16, 19, 21

*Fujitsu Gen. Am., Inc. v. United States*,
283 F.3d 1364 (Fed. Cir. 2002)....................11

*Hitachi Energy USA Inc. v. United States*, Ct. No. 16-00054 (Ct. Int'l Trade Sept. 19, 2023)....................16

*Jinfu Trading Co. v. United States*, Slip Op. 05-14 (Ct. Int'l Trade Jan. 31, 2005)....................22

*Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026)....................1, 2, 5, 8, 19, 22

*Luxury Brand Holdings, Inc. v. United States*, No. 26-00219 (Ct. Int'l Trade July 17, 2026)....................12

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094 (D.C. Cir. 2003)....................20

*McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Fla. Dep't of Bus. Regul.*, 496 U.S. 18 (1990)....................14

*MCI Telecomms. Corp. v. FCC*, 627 F.2d 322 (D.C. Cir. 1980)....................15

*MS Int'l, Inc. v. United States*,
425 F. Supp. 3d 1332 (Ct. Int'l Trade 2020)....................7

*N.Z. Lamb Co. v. United States*, 40 F.3d 377 (Fed. Cir. 1994)....................11

*Norsk Hydro Can., Inc. v. United States*,
472 F.3d 1347 (Fed. Cir. 2006)....................7

*NSK Ltd. v. United States*, 819 F. Supp. 1096 (Ct. Int'l Trade 1993)....................9

*Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21 (D.C. Cir. 1984)....................15

*In re Pub. Emps. for Env't Resp.*,
957 F.3d 267 (D.C. Cir. 2020)....................16

*Shinyei Corp. of Am. v. United States*,
355 F.3d 1297 (Fed. Cir. 2004)....................5, 6, 22

*Tax Analysts v. U.S. Dep't of Just.*,
845 F.2d 1060 (D.C. Cir. 1988)....................14

*Telecomms. Rsch. & Action Ctr. v. FCC*,
750 F.2d 70 (D.C. Cir. 1984)....................15

*Yancheng Baolong Biochemical Prods. Co. v. United States*, 406 F.3d 1377 (Fed. Cir. 2005)....................8

*Zenith Radio Corp. v. United States*,
710 F.2d 806 (Fed. Cir. 1983)....................18

**Statutes**

5 U.S.C. § 555(b) ....................15

5 U.S.C. §§ 701–706....................5

5 U.S.C. § 706(1) ....................15

5 U.S.C. § 706(2)(A), (C) ....................14

19 U.S.C. § 1504(d) ....................14

19 U.S.C. § 1505....................17

19 U.S.C. § 1514(a) ....................10, 11

19 U.S.C. § 1516a....................6

19 U.S.C. § 1677a(c)(2)(A) ....................6, 18

26 U.S.C. § 6621....................17

28 U.S.C. § 1581(i)....................1, 5, 6, 22

28 U.S.C. § 1581(i)(1)(B)....................5, 6

28 U.S.C. § 1581(c) ....................6

28 U.S.C. § 1585.................... *passim*

28 U.S.C. § 2631(i)....................5

28 U.S.C. § 2643....................6

28 U.S.C. § 2643(a)(1)....................16, 21

28 U.S.C. § 2643(c)(1).................... *passim*

Administrative Procedure Act....................5

International Emergency Economic Powers Act .................... *passim*

Tariff Act ....................10, 11

**Other Authorities**

91 Fed. Reg. 42,207, 42,208 .................... *passim*

91 Fed. Reg. 60,141-42 (Sept. 22, 2026) .......... 17

Administrative Order 25-02 .......... 2

Standard Chambers Procedures 2(B)(2) .......... 25

33 Charles Alan Wright & Charles H. Koch, Jr., *Federal Practice and Procedure* § 8302 (2d ed. 2023) .......... 5

U.S. Customs & Border Prot., *International Emergency Economic Powers Act (IEEPA) Duty Refunds*, https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds (last visited Oct. 19, 2026) .......... 4, 9, 10, 16

U.S. Customs & Border Prot., *ACE Portal: CAPE Declarations and Error Definitions*, CBP Pub. No. 5612-0626 (June 29, 2026) .......... 21

*Silicon Metal from Australia: Final Affirmative Determination of Sales at Less Than Fair Value*, 91 Fed. Reg. 39,593 (Dep't Commerce June 30, 2026) .......... 18

Pursuant to 28 U.S.C. § 1581(i), Plaintiff-Intervenor National Seafood Association, Inc. ("National Seafood" or, with Aditya Birla Chemicals USA Inc. and Pack Perfect Inc., collectively "Plaintiffs") hereby respectfully moves this Court for a targeted order directing U.S. Customs and Border Protection ("CBP") to refund the duties imposed under the International Emergency Economic Powers Act ("IEEPA") on Type 03 customs entries (the "IEEPA Component"), which the Supreme Court has held unlawful in *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026).

Though the Government does not contest that the IEEPA duties are unlawful and that they must be refunded, it refuses to do so promptly with respect to Type 03 customs entries, citing administrative challenges surrounding the unrelated Antidumping/Countervailing Duties ("AD/CVD") liability component of those entries (more specifically, entries subject to AD/CVD whose liquidation remains pending). *See* ECF No. 14 at 8 (conceding that "[t]he Government does not contend that the IEEPA duties invalidated in *Learning Resources* . . . are lawful" and that Type 03 entries "will be liquidated without IEEPA duties after CBP receives AD/CVD liquidation instructions from Commerce"). The supposed existence of administrative challenges is no justifiable reason to avoid refunding amounts unlawfully collected in the first place—let alone for many months or years. Moreover, such administrative challenges hold no real weight because the IEEPA Component of Type 03 entries is separately identifiable. As CBP's own materials show, the Consolidated Administration and Processing of Entries ("CAPE") system—which CBP uses to refund other IEEPA tariffs—provides: (a) identification of IEEPA-refundable entry-summary lines, (b) segregation and removal of the IEEPA Component of those lines and their corresponding duties, and (c) preservation of any AD/CVD, Section 232 and 301 tariffs, taxes, and fees. *See Agency Information Collection Activities; Extension; Court-Ordered Refunds Under the International Emergency Economic Powers Act Worksheet*, 91 Fed. Reg. 42,207, 42,208 (July 8,

2026). It is thus both impermissible and unnecessary to withhold the IEEPA Component for Type 03 entries.

Accordingly, National Seafood respectfully requests that the Court enter an order directing the Government to refund, within 30 days, the IEEPA Component of affected Type 03 entries while preserving all AD/CVD liability and other duties, taxes, fees, netting, and lawful offsets. Should the Court find the Government cannot do so within 30 days, in the alternative, National Seafood respectfully requests that the Court direct the Government to—as soon as the Court finds practicable—supply the Court with a concrete implementation plan, deadlines, and entry-level reporting so that Type 03 importers are not left in an indefinite later-deployment category.

National Seafood further requests that the Court's order include a narrowly tailored declaratory provision, pursuant to 28 U.S.C. §§ 2643(c)(1) and 1585, confirming that CBP may not withhold the IEEPA Component of Type 03 entries pending AD/CVD liquidation and that the Court's order supplies CBP the authority to issue those refunds.

## BACKGROUND

### A. CBP Built the CAPE System to Return Unlawful IEEPA Duties But Delays the Return for Type 03 Entries.

The original Plaintiffs filed this action on January 7, 2026 challenging the lawfulness of IEEPA tariffs and seeking refunds for amounts imposed under the IEEPA tariffs, with interest. ECF No. 2 ¶¶ 5, 18; *id.*, Prayer for Relief ¶ (l). The action was stayed two days later pursuant to Administrative Order 25-02. *See* ECF No. 14 at 4. After the Supreme Court found the IEEPA tariffs unlawful in *Learning Resources*, the Court of International Trade ("CIT") entered IEEPA refund orders requiring CBP to liquidate or reliquidate affected entries without regard to IEEPA duties and to refund any IEEPA duties paid. *See* ECF No. 14 at 2; 91 Fed. Reg. at 42,208. Because the IEEPA duties assessed from February 3, 2025 through February 24, 2026 totaled an estimated

$166 billion across more than 53 million entry summaries, CBP was unable to process the refunds in a timely or efficient manner. *See* 91 Fed. Reg. at 42,208. To solve this problem, CBP developed the CAPE system. *Id.*

Significantly, CBP concedes that suspended or extended entries, including entries subject to AD/CVD—like the Type 03 entries here—may be included on a CAPE Declaration and that the IEEPA Component on those entries will be removed. *Id.* But for entries that remain suspended pending Commerce liquidation instructions, CBP will not actually process the IEEPA refund until liquidation. *See* ECF No. 14 at 3–4 (such entries "will be accepted on a CAPE Declaration and the IEEPA duties will be removed, but CBP will not liquidate or process the refund of the IEEPA duties until it receives instructions from Commerce to lift the suspension and liquidate the entries"). And Type 03 entries for which Commerce has already issued liquidation instructions present a separate problem: CBP excludes those entries from CAPE Phase 1 altogether. Thus, whether Commerce's liquidation instructions remain outstanding or have already issued, CBP's current process does not provide Type 03 importers with a present mechanism to obtain the IEEPA refunds mandated by this Court in response to the Supreme Court's ruling.

CBP's decision to arbitrarily delay this subset of refunds is not without consequence: countless importers of record ("IORs"), including the original Plaintiffs and National Seafood's members, paid IEEPA duties on entries subject to AD/CVD orders and are owed refunds that collectively total hundreds of millions of dollars. *See* ECF No. 15 at 1–2; ECF No. 15-1 at 2–3. The delayed refunds owed to Plaintiffs and U.S. seafood processors and distributors have been withheld since early 2026 with no identified end date for return. ECF No. 15 at 2; ECF No. 15-1 at 3. And because Commerce reviews AD/CVD entries in multi-year administrative cycles, Type

03 importers like Plaintiffs will likely be forced to wait *several years* for the refunds to which they are entitled. ECF No. 15-1 at 3–4 & n.1.

**B. CAPE Identifies and Segregates the IEEPA Component from Other Duty Liabilities.**

In public notices, CBP has represented that CAPE can "determine with confidence which lines on an entry summary are eligible for an IEEPA refund while ensuring the remaining duties (including duties owed for [AD/CVD] remedies and Section 232 tariffs), tax, and fees that are owed the U.S. government are retained and collected as usual." 91 Fed. Reg. at 42,208. CBP has further represented that CAPE can "ensure that the precise duty owed to the IOR is refunded directly to the IOR's account"—there will be "no overpayments or payments to an erroneous party." *Id.* In CBP's own words, then, CAPE already can separate line by line an entry's IEEPA Component from its AD/CVD duties and refund the IEEPA Component only without disturbing other items. CBP's IEEPA refund website is equally clear: "Once a CAPE Declaration is validated and accepted, ACE [(CBP's Automated Commercial Environment)] updates the appropriate entry summary lines by removing the [IEEPA Component], resulting in an updated version of the entry." U.S. Customs & Border Prot., International Emergency Economic Powers Act (IEEPA) Duty Refunds, https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds (last visited Oct. 19, 2026) (*IEEPA Duty Refunds*).

Notably, CBP's website also notes that all CAPE-processed refunds remain subject to "the netting of all over- and under-payments for the entire entry, as determined at liquidation or reliquidation," and to "the potential diversion of refunds as necessary and appropriate to offset the importer's legally fixed and undisputed unpaid debts to the United States." *Id.* (citing 19 C.F.R. §§ 24.72, 159.1). In other words, the CAPE system establishes a mechanism to settle up a given entry at liquidation, including by issuing a bill "if the amount paid on the entry as a whole is less than the recalculated duty owed at liquidation or reliquidation." *Id.* Thus, removing and refunding

the separately identifiable IEEPA Component need not foreclose CBP's later reconciliation of the entry or collection of any other amount lawfully due at liquidation.

## JURISDICTION

### A. The Court Has Jurisdiction Under Section 1581(i) to Review CBP's Administration of IEEPA Refunds and to Grant National Seafood's Requested Relief.

This Court has jurisdiction pursuant to 28 U.S.C. § 1581(i), which grants residual jurisdiction over actions arising out of laws providing for tariffs, duties, or the administration and enforcement of those matters. 28 U.S.C. § 1581(i)(1)(B). Under Section 1581(i), a plaintiff may challenge agency action in the CIT for any cause of action created by the general statutory review provisions of the Administrative Procedure Act ("APA"). *See Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1305 (Fed. Cir. 2004); *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1344 (Fed. Cir. 2011) (explaining that the APA "creates a right of judicial review, even in the absence of a review-authorizing statute, for 'final agency action' for which there is no other adequate remedy in a court"); *see also* 28 U.S.C. § 2631(i) (authorizing "any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5" to bring a "civil action" under the CIT's residual § 1581(i) jurisdiction), 2640(e) (requiring the CIT to apply the standard of review in 5 U.S.C. § 706 in civil actions brought under § 1581(i)); 5 U.S.C. §§ 701–706; 33 Charles Alan Wright & Charles H. Koch, Jr., *Federal Practice and Procedure* § 8302 (2d ed. 2023).

Accordingly, this Court has routinely allowed plaintiffs challenging CBP's administrative mishandling of IEEPA refunds to proceed under § 1581(i). The Supreme Court confirmed that IEEPA tariff challenges belong in this Court, explaining that such challenges "arise[ ] out of" modifications to the Harmonized Tariff Schedule of the United States ("HTSUS"), which, when made under an act affecting import treatment as described in 19 U.S.C. § 2483, are "considered to

be statutory provisions of law for all purposes," and thus "arise[ ] out of [a] law of the United States providing for . . . tariffs." *Learning Res.,* 607 U.S. at 240 n.1 ("We agree with the Federal Circuit that the *V.O.S. Selections* case falls within the exclusive jurisdiction of the CIT.") (quoting 28 U.S.C. § 1581(i)(1); 19 U.S.C. § 3004(c)(1)(C)); *see also Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 679285, at *2 (Ct. Int'l Trade Mar. 5, 2026) (directing CBP to liquidate unliquidated entries, and reliquidate entries whose liquidation is not final, "without regard to the IEEPA duties"). Once § 1581(i) jurisdiction is established, 28 U.S.C. §§ 1585 and 2643 authorize the Court to grant appropriate legal and equitable relief.

**B. The Government Cannot Recast this Section 1581(i) Refund-Administration Case as a Commerce AD/CVD Challenge.**

The Government argues Plaintiffs must proceed, if at all, under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c) because the "heart" of the concern is DOC's deduction of IEEPA duties from constructed export price under 19 U.S.C. § 1677a(c)(2)(A). *See* ECF No. 14 at 8–9. That reframing is incorrect. This is not a Section 1516a challenge to a DOC AD/CVD determination: National Seafood does not ask the Court to recalculate an AD/CVD rate, change a scope ruling, revise DOC's methodology (including its deduction methodology), alter a margin, or review an administrative record. Rather, this action concerns CBP's *administration* of IEEPA refunds—whether CBP may continue withholding a separate, invalidated IEEPA duty. It is therefore properly a Section 1581(i) challenge to the administration and enforcement of trade determinations.

Two Federal Circuit decisions confirm this distinction. In *Shinyei*, the Federal Circuit held that § 1581(i)(4) supplied jurisdiction where the plaintiff challenged the administration and enforcement. 355 F.3d at 1304–05. In *Consolidated Bearings Co. v. United States*, the Federal Circuit held that "an action challenging Commerce's liquidation instructions is not a challenge to

the final results, but a challenge to the 'administration and enforcement' of those final results," over which "[s]ection 1581(i)(4) grants jurisdiction." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1002–04 (Fed. Cir. 2003). It also held that the challenge was not barred by failure to participate in the administrative review because the plaintiff was not challenging the review itself and no administrative process existed to challenge the implementation practice. *Id.*

The Government's cited AD/CVD channeling principles apply where the plaintiff seeks review of an AD/CVD determination or an issue that can be raised through a scope, administrative review, or protest pathway. *See, e.g.*, *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1356–58 (Fed. Cir. 2006) (challenge properly framed as Commerce determination); *MS Int'l, Inc. v. United States*, 425 F. Supp. 3d 1332, 1338–39 (Ct. Int'l Trade 2020) (interlocutory challenge to Commerce investigation reviewable after final determination). But National Seafood seeks no such relief.

The Government also invokes statutory liquidation provisions governing suspended AD/CVD entries. *See* ECF No. 14 at 10–11. Those provisions preserve the suspension needed to assess AD/CVD liability; they do not authorize CBP to withhold refunds on *separate* IEEPA Components that the Supreme Court has invalidated.

## ARGUMENT

The Government concedes that the IEEPA duties on Type 03 entries are unlawful, yet CBP refuses to refund them until the unrelated AD/CVD component of such entries is liquidated potentially *years* later. That position is unsustainable. *First*, this Court's previously issued refund orders already reach unliquidated entries subject to IEEPA duties. *Second*, the requested relief leaves AD/CVD liability untouched because CBP's own CAPE system already identifies and removes the IEEPA Component while preserving all other duties, netting, and offsets. *Third*, no statutory authority requires CBP to retain an invalidated IEEPA Component, and—in any event—

the Court's order can supply any necessary authority for the refunds. *Fourth*, CBP's blanket delay is arbitrary, not in accordance with law, and unreasonably delayed, and any purported administrative burden is no basis for withholding refunds for unlawfully collected duties. *Lastly*, the Court has ample authority to order the IEEPA Component refunded within 30 days or, alternatively, to require a concrete implementation plan with deadlines and reporting.

**A. The Court's Existing Refund Orders Already Require Refund of the IEEPA Component of Type 03 Entries.**

The Government's continued withholding of the IEEPA Component on Type 03 entries cannot be squared with either the Supreme Court's decision in *Learning Resources* or this Court's orders implementing it. First, the Supreme Court has held that "IEEPA does not authorize the President to impose tariffs," *Learning Res.*, 607 U.S. at 255, so CBP has no lawful basis to retain those duties. Second, this Court has since entered orders implementing that mandate, and those orders reach Type 03 entries. Refusal to promptly refund the IEEPA duties for Type 03 entries cannot be reconciled with this Court's existing orders. This Court has already recognized in similar cases that "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the Learning Resources decision." *Atmus Filtration*, 2026 WL 679285, at *1. The Court has accordingly directed that, "with respect to any and all unliquidated entries that were entered subject to IEEPA duties," CBP "liquidate those entries without regard to the IEEPA duties." Order at 2, *Atmus Filtration*, No. 26-01259 (Ct. Int'l Trade Mar. 20, 2026), ECF No. 49. Type 03 entries are unliquidated entries that were entered subject to IEEPA duties. And as early as April 2026, the Court directed CBP to consider "pre-liquidation refunds for suspended entries" as it developed CAPE. Order at 2, *Atmus Filtration*, No. 26-01259 (Ct. Int'l Trade Apr. 1, 2026), ECF No. 52. The relief National Seafood seeks thus falls soundly within both the Supreme Court's holding and this Court's orders implementing it.

The Government is bound to comply with those orders. *See Yancheng Baolong Biochemical Prods. Co. v. United States*, 406 F.3d 1377, 1382 (Fed. Cir. 2005) (holding government in contempt of preliminary injunction); *NSK Ltd. v. United States*, 819 F. Supp. 1096, 1099 (Ct. Int'l Trade 1993) (cautioning that Commerce must "adhere to the law and to the decisions of the Court" and that, otherwise, the court would "be compelled to order sanctions against the government and hold Commerce in contempt of court"); *see also Budd Co., Ry. Div. v. United States*, 1 CIT 175, 178 (1981) (recognizing that this Court's remedial powers are coextensive with those of a federal district court, including the power to issue declaratory judgments, writs of mandamus, and injunctive relief).

**B. CBP's CAPE System Already Segregates the IEEPA Component and Leaves AD/CVD Liability Untouched, So the Government's Administrative Concerns Are Without Merit.**

Notwithstanding the Court's prior orders, the Government objects that Plaintiffs ask CBP to "carve one duty component out of a suspended entry summary and disburse it in advance of the reconciliation at liquidation specified by statute, while somehow guarding against double or over-refunds." ECF No. 14 at 10–11. But as set forth above, CBP *already* carves out the IEEPA Component of Type 03 entries through the CAPE system: CAPE identifies IEEPA-refundable entry-summary lines, removes the IEEPA Chapter 99 provision and corresponding IEEPA duties, and preserves the remaining duties, taxes, and fees. *See* 91 Fed. Reg. at 42,208; *IEEPA Duty Refunds*; *see also* Oral Arg. Tr. 23:9–14 (Sept. 15, 2026) (observing that the inclusion of IEEPA duties "could be separated out" from the fact-specific aspects of the AD/CVD proceeding); *id.* at 37:21–25 (rejecting as "untrue" the Government's claim that refunds would be "burdensome because this would be a manual process"). The relief Plaintiffs seek, therefore, is not just a theoretical possibility—it is explicitly provided for within the agency's existing processes. This includes the process for suspended, extended, or under-review entries such as those subject to

AD/CVD: CBP admits that those entries may be accepted on a CAPE Declaration and that the IEEPA duties may be segregated and removed. *See* ECF No. 14 at 3–4.

Similarly, CBP's own materials resolve the Government's concern about over-refunds. As also noted above, CBP represents that CAPE ensures "that the precise duty owed to the IOR is refunded directly to the IOR's account—no overpayments or payments to an erroneous party," while all other duties, taxes, and fees are retained. 91 Fed. Reg. at 42,208. CBP's refund website likewise confirms that the ordinary end-of-entry safeguards—netting of over- and under-payments at liquidation and offset against the importer's undisputed debts—remain in place. *IEEPA Duty Refunds* (citing 19 C.F.R. §§ 24.72, 159.1). Plaintiffs do not ask the Court to disturb those lawful safeguards nor is such disturbance necessary for Plaintiffs to obtain their requested relief. Plaintiffs ask only that CBP stop relying on the status and timing of unrelated AD/CVD entry components as a basis to retain what are segregable and invalidated IEEPA duties.

**C. CBP Has No Statutory Authority to Retain the Separate IEEPA Funds Until Full Liquidation.**

Putting aside the Court's prior orders and CBP's own guidance, the Government insists that CBP cannot "carve one duty component out of a suspended entry summary" because the statutory scheme for suspended entries does not permit it. ECF No. 14 at 10–11. That position depends on the premise that a Type 03 entry must be treated as an indivisible whole, such that CBP cannot address the unlawful IEEPA Component until final liquidation of every other duty issue on the entry. The applicable statutes and Federal Circuit precedent reject that premise.

The Tariff Act confirms that discrete charges may be addressed separately from liquidation. 19 U.S.C. § 1514(a) differentiates between "charges or exactions" in subsection (a)(3) and "the liquidation or reliquidation of an entry" in subsection (a)(5). Thus, Congress recognized that CBP

must make decisions about discrete monetary charges on the one hand, and liquidation of entries on the other.

The Federal Circuit has reinforced this distinction in the context of protest and review, holding that CBP's "decisions on charges or exactions, such as assessed interest, are independent of its decisions on liquidation or reliquidation." *Castelazo & Assocs. v. United States*, 126 F.3d 1460, 1463–64 (Fed. Cir. 1997); *see also Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1372–73 (Fed. Cir. 2002) (explaining that Section 1514(a) treats charges or exactions and liquidation as distinct Customs decisions, such that a challenge to an interest assessment is not a challenge to liquidation); *N.Z. Lamb Co. v. United States*, 40 F.3d 377, 382–83 (Fed. Cir. 1994) (holding (a) interest on underpaid duties was a separate Section 1514(a)(3) charge that Customs did not need to decide at liquidation, and (b) Customs could make a separate decision on interest when it later informed the importer that interest was due and identified the amount or method of computation). That distinction applies here with even greater force because the IEEPA Component is more readily segregable than the interest at issue in *New Zealand Lamb*, for example. *See* 40 F.3d at 382–83. Interest may depend on the amount and timing of the underlying duty assessment. By contrast, an IEEPA Component is a distinct, line-identifiable monetary sum imposed through Chapter 99 HTSUS provisions, which CAPE can identify and segregate. And no future Commerce AD/CVD proceeding can make the IEEPA withholding lawful. The Government's position here, therefore, renders illusory Congress's separate treatment of these two entry components, effectively collapsing subsection (a)(3)'s "charges or exactions" into subsection (a)(5)'s "liquidation or reliquidation."[1]

[1] As emphasized above, *see supra* Jurisdiction at B, National Seafood challenges CBP's generally applicable administration of IEEPA refunds, not the denial of an individual protest, the liquidation of a particular entry, or any importer-specific liquidation decision. The above-cited Section 1514

Even if the statutory scheme were read to tie the refund to liquidation, this Court's order can supply the Government with any necessary authority to issue the refund. The Government previously took a similar position concerning finally liquidated entries in *Luxury Brand Holdings, Inc. v. United States*, maintaining that "a court order directing the reliquidation of entries, whose liquidation has become final, would be necessary to provide the Government with the authority to reliquidate these finally liquidated entries." No. 26-00219, slip op. at 2 (Ct. Int'l Trade July 17, 2026). This Court responded directly: "[F]or the Government, this order provides the authority to reliquidate all of Plaintiffs' liquidated entries subject to IEEPA duties, including finally liquidated entries." Order at 3, *Luxury Brand Holdings*, No. 26-00219 (Ct. Int'l Trade July 17, 2026), ECF No. 10. The same approach resolves the Government's contention here.

Furthermore, the relief Plaintiffs request is narrowly tailored. The original Plaintiffs and National Seafood do not ask the Court to order CBP to liquidate suspended entries, refund AD/CVD deposits, change Commerce instructions, or alter any final AD/CVD assessment. Instead, they simply ask the Court to order CBP to return unlawful, line-identifiable IEEPA sums while preserving all other liabilities. The CIT has authority to craft such relief and has done so in the context of reliquidation, reasoning that the APA authorizes injunctive relief requiring reliquidation unless another statute expressly or impliedly forbids it. *See, e.g.*, *AM/NS Calvert LLC v. United States*, 654 F. Supp. 3d 1324, 1338–49 (Ct. Int'l Trade 2023). This is especially so where, as here, "[t]he government also fail[ed] to show how ordinary equitable principles bar such relief." *Id.* at 1332. The relief requested here is narrower: no reopening of final liquidations or changing

---

cases are included for the narrower structural point that the Tariff Act treats discrete monetary charges or exactions as legally distinct from liquidation and reliquidation decisions.

AD/CVD results is needed, just the repayment of a discrete, invalidated duty component that CBP can already identify and remove.

### D. Administrative Burden and CAPE Phasing Do Not Justify the Indefinite Withholding of Unlawfully Collected Duties.

#### 1. The Plaintiffs' Legal Right to Prompt Refunds of *All* IEEPA Tariffs Plainly Outweighs the Government's Misplaced Administrative Burden Argument.

Administrative burden does not justify the Government's retention of money it has no lawful right to keep. At oral argument, the Government asserted that providing these refunds would "create an enormous burden on CBP." Oral Arg. Tr. 17:13–16. It also asserted that pre-liquidation refunds "could take years to work through" because "this would be a manual process." *Id.* at 37:21–22.

But CBP's own declaration describes a mechanism for issuing refunds before liquidation. In his April 14, 2026 declaration, Brandon Lord, Executive Director of the Trade Programs Directorate in CBP's Office of Trade, explained that "pre-liquidation refunds, also known as administrative refunds, occur prior to liquidation" and "require manual processing." Lord Decl. ¶ 8 (Apr. 14, 2026), ECF No. 15, *Euro-Notions Florida, Inc. v. United States*, No. 25-00595 (Ct. Int'l Trade). Lord further explained that the administrative-refund process requires CBP to manually adjust the collection record in ACE, move funds to suspense accounts, and generate manual refunds. *Id.* At the time, CBP also stated that it "continues to consider options for pre-liquidation refunds for suspended entries subject to antidumping and/or countervailing duty (AD/CVD) orders." *Id.* ¶ 7.

CBP estimated that approximately 166,000 entry summaries subject to AD/CVD orders contained $2.9 billion in paid IEEPA duties and asserted that issuing administrative refunds for those entries would require repeating that manual process entry by entry, "dramatically increasing

the workload and diverting personnel from fully carrying out the agency's commercial trade operations and trade enforcement mission." *Id.* ¶ 9.

But even accepting CBP's asserted administrative burden, administrative inconvenience cannot justify indefinite withholding of duties the Government has no lawful right to retain. *See McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Fla. Dep't of Bus. Regul.*, 496 U.S. 18, 49–51 & n.35 (1990) (holding that, although a State's asserted interest in avoiding "serious economic and administrative dislocation" may shape the form of relief, it does not justify a refusal to provide relief, and explaining that the cost of an otherwise available refund cannot justify withholding it); *Tax Analysts v. U.S. Dep't of Just.*, 845 F.2d 1060, 1066–67 (D.C. Cir. 1988) (recognizing that compliance could impose "large administrative burdens," but holding that the statute did not permit courts to balance statutory commands against administrative burden or allow an agency to avoid a statutory duty on grounds of administrative convenience), *aff'd* 492 U.S. 136 (1989); *Bull v. United States*, 295 U.S. 247, 260–61 (1935) (stating that when the sovereign retains money "unjustly taken in violation of its own statute," the withholding is wrongful and restitution is owed); *see also Cobell v. Norton*, 240 F.3d 1081, 1096–97 (D.C. Cir. 2001) ("[T]he lack of a timetable does not give government officials carte blanche to ignore their legal obligations," and "administrative convenience" is only one consideration "in the balance"; "[N]either a lack of sufficient funds nor administrative complexity, in and of themselves, justify extensive delay, nor can the government claim that it has become subject to unreasonable expectations.").

The APA compels the same result. Plaintiffs challenge CBP's categorical delay of refunds for AD/CVD entries as agency action "not in accordance with law" and "in excess of statutory . . . authority." 5 U.S.C. § 706(2)(A), (C); *see* ECF No. 2 ¶ 57. That delay, which turns on the status and timing of the underlying AD/CVD proceedings without regard to their length or the separate

and invalidated nature of the IEEPA Component, violates both provisions. *See* ECF No. 15-1 at 5–6. The provisions governing AD/CVD liquidation establish the process for determining and collecting the AD/CVD liability on an entry, and Plaintiffs' requested relief leaves that process intact. They do not, however, require CBP to retain the separately identifiable IEEPA Component merely because the separate AD/CVD liability remains unresolved.

The APA also requires agencies to conclude matters "within a reasonable time," 5 U.S.C. § 555(b), and authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). A court with jurisdiction to review agency action "also has jurisdiction over claims of unreasonable delay." *Cobell*, 240 F.3d at 1095 (citing *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984) ("*TRAC*")).

Administrative delay is governed by a rule of reason, and courts routinely apply the D.C. Circuit's *TRAC* framework to assess claims that agency action has been "unreasonably delayed" under 5 U.S.C. § 706(1). *See TRAC*, 750 F.2d at 80–81 (retaining jurisdiction over the FCC's years-long delay in deciding whether AT&T was required to refund alleged overcharges to customers, ordering the agency to advise the court of its anticipated resolution dates and to report every 60 days, and explaining that "[c]omplex regulation must still be credible regulation") (quoting *MCI Telecomms. Corp. v. FCC*, 627 F.2d 322, 340–41 (D.C. Cir. 1980)); *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 810–12 (D.C. Cir. 2024). Under the *TRAC* framework, the court considers the length of delay, statutory timetables, the interests prejudiced by delay, competing agency priorities, and whether impropriety is present; the court need not "find any impropriety lurking behind agency lassitude" to hold that agency action is unreasonably delayed. *TRAC*, 750 F.2d at 80 (quoting *Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 34 (D.C. Cir. 1984)).

Courts have repeatedly intervened when delay becomes open-ended, nullifies legal rights, or leaves affected parties without a meaningful path to relief. *See Cutler v. Hayes*, 818 F.2d 879, 897–98 (D.C. Cir. 1987) (deference to an agency's schedule "is sharply reduced when injury likely will result from avoidable delay"); *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855–58, 861–62 (D.C. Cir. 2008) (granting mandamus where agency delay lacked a rule of reason and requiring final action by a date certain); *In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 275–77 (D.C. Cir. 2020) (granting mandamus where agencies had failed for nineteen years to meet a statutory directive to "make every effort" to act within two years, ordering a compliance schedule with periodic updates, and explaining that even "the lack of a hard deadline 'does not give government officials carte blanche to ignore their legal obligations'" (quoting *Cobell*, 240 F.3d at 1096)).

Finally, the CIT may deploy its remedial powers to award money judgments and any other appropriate relief—including orders requiring refunds, a concrete implementation plan, and reporting—notwithstanding administrative complexity. 28 U.S.C. §§ 1585, 2643(a)(1), (c)(1); *see* ECF No. 2 ¶ 7 & Prayer for Relief ¶¶ (l), (o); *TRAC*, 750 F.2d at 81.

**2. The Indefinite Delay CBP Suggests Is Inherently Unreasonable.**

In this case, the Government's declarant admits that CBP can accept AD/CVD entries on a CAPE Declaration and remove the IEEPA duties, yet CBP delays the refund until AD/CVD liquidation. *See* Lord Decl. ¶ 14a (Mar. 30, 2026), *Freestyle World, Inc. v. United States*, No. 26-01088 (Ct. Int'l Trade), ECF No. 24-5 [hereinafter Mar. 30, 2026 Lord Decl.], *cited in* ECF No. 14 at 3–4. CBP's public refund guidance lists AD/CVD entries only as a future-deployment category, with no specific CAPE phase or timeline. *See IEEPA Duty Refunds*; *see* Mar. 30, 2026 Lord Decl. ¶¶ 15a, 16–17. The practical effect is open-ended delay. At best, Commerce's administrative reviews "routinely take two to three years per cycle," leaving "multiple years' worth of entries" suspended and excluded from refund processing "regardless of how long DOC's review

takes." ECF No. 15-1 at 3–4. At worst liquidation can be suspended for a decade or more. *See, e.g.*, *Hitachi Energy USA Inc. v. United States*, Ct. No. 16-00054 (Ct. Int'l Trade Sept. 19, 2023) (entries subject to *Large Power Transformers from Korea*, A-580-867, made during the 2013–2014 period of review, not subject to liquidation instructions until December 8, 2023). For importers subject to both AD and CVD orders, each with "its own independent review cycle and liquidation timeline," the delay compounds. ECF No. 15-1 at 4 & n.1. CBP has thus left Type 03 entries without any concrete implementation date for refund, even though CBP acknowledges that suspended AD/CVD entries may be accepted on a CAPE Declaration and that CAPE will remove the IEEPA duties from those entries without disturbing their liquidation status.

And the delay is not harmless. "Economic harm is clearly an important consideration and will, in some cases, justify court intervention." *Cutler*, 818 F.2d at 898; *see TRAC*, 750 F.2d at 80. CBP's open-ended delay inflicts at least three distinct harms on Type 03 importers, and later interest cures none of them.

First, the delay deprives importers of substantial capital they are owed *now*. The refunds withheld from National Seafood's seafood-importer members alone collectively total hundreds of millions of dollars and have been unlawfully withheld since early 2026 with no identified end date for return. ECF No. 15-1 at 3. Statutory interest under 19 U.S.C. § 1505 compensates, at most, for the time value of money at the government's rate.[2] It does not give importers the use of that

[2] As of the date of this filing, the statutory interest rates for refunds of customs duties under 19 U.S.C. § 1505 (effective for the calendar quarter of October 1, 2026, to December 31, 2026) are 6% for corporations and 7% for non-corporati*ons. See 19 U.S.C. § 1505; 26 U.S.C. § 6621; Quarterly IRS Interest Rates Used in Calculating Interest on Overdue Accounts and Refunds of Customs Duties*, 91 Fed. Reg. 60,141-42 (Sept. 22, 2026). For many National Seafood Association members, that rate underwhelms the business realities of today's high-interest rate economy.

capital—to buy inventory, service debt, or run their businesses—during AD/CVD reviews that "routinely take two to three years per cycle." *Id.* at 4.

Second, the delay compounds IORs' exposure in ongoing AD/CVD proceedings through an endless catch-22 cycle. Commerce first reduces U.S. price by any "United States import duties" included in that price. 19 U.S.C. § 1677a(c)(2)(A). Then, as was the case in *Silicon Metal from Australia*, when respondents ask Commerce not to deduct the IEEPA duties they had paid because those duties were unlawful and would be refunded, Commerce refuses because no refunds have yet been issued, reasoning that "[a]bsent evidence that [the respondent] received a refund for this charge, Commerce is unable to make a determination regarding an event that might occur in the future." *Silicon Metal from Australia: Final Affirmative Determination of Sales at Less Than Fair Value*, 91 Fed. Reg. 39,593 (Dep't Commerce June 30, 2026), and accompanying Issues & Decision Mem. at 17 (attached as Appendix I to ECF No. 9).

Commerce then subtracts the IEEPA duties, resulting in a lower U.S. price and a higher dumping margin and, in turn, higher antidumping duties for the importer. *See* ECF No. 15-1 at 5. Thus the catch-22: Commerce deducts the IEEPA duties because they remain unrefunded, and they remain unrefunded only because CBP is withholding them. The Government responds to this catch-22 by stating that Commerce's decision relies on the specific record before it. ECF No. 14 at 6. But that is exactly the problem: so long as CBP withholds the refunds, the record in every future review will show the same unrefunded duty, and Commerce will keep deducting it. And once the affected entries liquidate at those inflated rates, a later refund of the IEEPA duties, with interest, will not reverse the higher antidumping duties already assessed. *Cf. Zenith Radio Corp. v. United States*, 710 F.2d 806, 811–12 (Fed. Cir. 1983) (recognizing that the loss of meaningful judicial correction upon liquidation can itself be irreparable). Accordingly, the longer CBP

withholds the refunds, the longer Commerce will treat the IEEPA duties as a real cost, and the more antidumping duties importers will owe as a result. Not only is this result illogical, but it is also inefficient.

Third, the delay damages importers' commercial relationships. This harm is not hypothetical. Since *Learning Resources*, downstream purchasers have pursued importers and retailers for a share of IEEPA refunds, filing a wave of consumer class actions seeking pass-through of tariff refunds, enough that the Judicial Panel on Multidistrict Litigation has already centralized one group of them. *See, e.g.*, Transfer Order, *In re Amazon Tariff Litig.*, MDL No. 3197 (J.P.M.L. Oct. 2, 2026) (centralizing consumer class actions seeking a share of IEEPA tariff refunds obtained by an importer). Importers of record that passed tariff costs on to customers are likewise fielding refund-sharing demands from their own buyers. Type 03 importers face those same demands but must tell their customers that their refunds are frozen indefinitely—while competitors whose entries carry no AD/CVD component have already been paid. *See Freestyle World, Inc. v. United States*, No. 26-01088, Slip Op. 26-123 (Ct. Int'l Trade Oct. 8, 2026) (noting that CAPE had refunded approximately $126 billion in duties and interest as of October 2, 2026). Lost goodwill and strained customer relationships of this kind cannot be repaired by a later interest payment.

Indeed, National Seafood's member companies laboring under the burden of substantial withheld IEEPA refunds now operate at a competitive disadvantage as compared to seafood suppliers providing the same *or similar* items that do not fall under an AD or CVD margin. For example, pangasius, a mild white fish popular in foodservice, has long been subject to antidumping duties. Pangasius competes with other imported white fish, such as cod, which is not subject to AD/CVD duties. Companies in this predicament cannot reliably predict when in 2027, 2028, or

2029 the applicable period of review will conclude. In the interim, and as compared to their non-AD/CVD competitors, such businesses will be less attractive to lenders, retail and foodservice customers, and potential investors. The result is a continuing competitive disadvantage attributable not to the underlying AD/CVD liability, but to CBP's unlawful withholding of the separate IEEPA refunds.

In sum, CBP built CAPE because ordinary entry-by-entry processing could not handle the refund volume. *See* 91 Fed. Reg. at 42,208. Having created a system "capable of isolating and calculating" the IEEPA duty amount, ECF No. 15 at 2, CBP cannot transform its own phasing choices into authority to keep the funds, and those choices cannot define the scope of importers' refund rights. *Cf. Cobell*, 240 F.3d at 1104 ("Claiming the role of administrator . . . does not absolve the government of its enforceable obligations."). At minimum, if the Court does not order immediate refunds across the Type 03 category, it should order CBP to file a concrete implementation plan with deadlines and status reporting. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003) (explaining that the APA leaves a reviewing court "discretion in determining how soon the agency must act," and that a court may retain jurisdiction over the case in order to monitor the "agency's assurances that it is proceeding as diligently as possible with the resources available to it"); *TRAC*, 750 F.2d at 80–81 (retaining jurisdiction and directing the agency to set resolution dates and report on its progress). The Government cannot collect unlawful duties, concede that repayment is owed, and then offer Type 03 importers no timeline for getting it back.

**3. CBP's Categorical Delay of the Entries at Issue Is Overbroad and Arbitrary.**

Even if some Type 03 entries present entry-specific impediments, CBP cannot justify a blanket refusal to issue IEEPA refunds on an entire category of entries. CBP's own CAPE guidance evaluates specific validation conditions entry by entry. By its own explanation, CBP's error

definitions include numerous rejected statuses, including final liquidation more than 80 days earlier, pending liquidation with a suspension record, entry under review, an impermissible entry type, absence of an IEEPA HTS provision, an open or suspended protest, and other discrete conditions. *See* U.S. Customs & Border Prot., *ACE Portal: CAPE Declarations and Error Definitions*, CBP Pub. No. 5612-0626 (June 29, 2026). Thus, if a particular entry raises an identifiable problem, CBP can reject or delay that entry and identify the reason.

The categorical policy also arbitrarily treats importers differently based on their AD/CVD timelines. The original Plaintiffs and National Seafood members share the same injury: continued withholding of hundreds of millions of dollars in invalidated IEEPA duties because their entries are tied to AD/CVD proceedings. ECF No. 15 at 4; ECF No. 15-1 at 2–4. But CBP has already approved IEEPA refunds to other importers worth more than $106 billion (including interest). ECF No. 14 at 4 (citing Lord Decl. ¶¶ 3–5 (Aug. 25, 2026), *Freestyle World, Inc. v. U.S. Customs & Border Prot.*, No. 26-01088 (Ct. Int'l Trade), ECF No. 38). Thus, importers who paid the same unlawful IEEPA duties are receiving vastly different refund treatment on an arbitrary basis: whether their entries happen to be encumbered by AD/CVD liquidation issues. Nothing about an importer's AD/CVD liquidation status makes the IEEPA duty lawful, unresolved, or less refundable.

**E. The Court Has Broad Authority to Order National Seafood's Tailored, Uniform Remedial Relief.**

This Court has broad power to grant effective relief. Section 1585 gives the Court all powers in law and equity of a district court, and Section 2643 authorizes money judgments and any other appropriate relief in a civil action, including declaratory and injunctive relief—including orders requiring refunds, a concrete implementation plan, and reporting. *See* 28 U.S.C. §§ 1585, 2643(a)(1), (c)(1) (the CIT may "order any other form of relief that is appropriate in a civil action,

including but not limited to declaratory judgments"). The Federal Circuit has recognized those provisions as broad remedial authority in § 1581(i) cases. *Shinyei*, 355 F.3d at 1312; *Am. Signature, Inc. v. United States*, 598 F.3d 816, 829–30 (Fed. Cir. 2010). And the CIT recently confirmed that, in a properly brought Section 1581(i) APA case, effective relief remains available, absent an express or implied statutory bar. *AM/NS Calvert*, 654 F. Supp. 3d at 1338–49.

Moreover, a uniform order is the most efficient way to proceed and serves both to protect parties' rights and to promote judicial economy. *See, e.g., Jinfu Trading Co. v. United States*, Slip Op. 05-14, at 3–4 (Ct. Int'l Trade Jan. 31, 2005) (Eaton, J.) (entering liquidation injunction against the United States, Commerce, and CBP "to fully protect plaintiff's rights, and in the interest of judicial economy"). Indeed, this Court has recently noted in the context of IEEPA refunds, "when establishing this Court, Congress cited '[c]onsiderations of judicial economy, and the need to increase the availability of judicial review in the field of international trade in a manner which results in uniformity without sacrificing the expeditious resolution of import-related disputes.'" *Atmus Filtration,* 2026 WL 679285, at *1 (quoting 126 CONG. REC. S13344 (daily ed. Sept. 24, 1980) (statement of Sen. Dennis DeConcini)). "The Constitution requires this uniformity." *Id.* (citing U.S. Const. art. I, § 8, cl. 1 (providing that "all Duties, Imposts and Excises shall be uniform throughout the United States")).

And, as the Court recognized, because the Court is "the only judge who will hear cases pertaining to the refund of IEEPA duties . . . there is no danger that another Judge, even one in this Court, will reach any contrary conclusions." *Id.* "To find otherwise would be to thwart the efficient administration of justice and to deny those importers who have filed suit the efficient resolution of their claims, and to deny entirely importers who have not filed suit the benefit of the *Learning Resources* decision." *Id.*

The same principle applies here. A uniform order expressly confirming that Type 03 entries are covered by the IEEPA refund obligation—and may not be relegated to different treatment merely because unrelated AD/CVD liability remains pending—would resolve the common issue once, preserve lawful AD/CVD administration, and avoid repetitive motions by similarly situated importers seeking the same return of invalidated IEEPA duties.

## CONCLUSION & RELIEF REQUESTED

For the foregoing reasons, National Seafood respectfully requests that the Court enter an order as follows:

**(I)** Directing the Government, within 30 days, to refund the IEEPA Component of affected Type 03 entries while preserving all AD/CVD liability, Section 232 and 301 duties, taxes, fees, netting, and lawful offsets, and, should the Court find the Government cannot do so within 30 days, directing the Government, as soon as the Court finds practicable, to supply the Court with a concrete implementation plan, deadlines, and entry-level reporting so that Type 03 importers are not left in an indefinite later-deployment category;

**(II)** Declaring pursuant to 28 U.S.C. §§ 2643(c)(1) and 1585 that CBP may not withhold the IEEPA Component of Type 03 entries pending AD/CVD liquidation and that the Court's order supplies CBP the authority to issue those refunds and declaring that Type 03 entries fall within the existing obligation set forth in the Court's refund orders; and

**(III)** Awarding such other relief as the Court deems just and proper.

Dated: October 19, 2026

Respectfully submitted,

/s/ Ashley Akers
Ashley Akers
HOLLAND & KNIGHT LLP
800 17th Street, NW, Suite 1100
Washington, DC 20006
Tel. (202) 441-5870
Ashley.akers@hklaw.com

*Counsel for Plaintiff-Intervenor*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ADITYA BIRLA CHEMICALS USA INC. and PACK PERFECT INC.<br><br>Plaintiffs,<br><br>and<br><br>THE NATIONAL SEAFOOD ASSOCIATION,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; EXECUTIVE OFFICE OF THE PRESIDENT; the UNITED STATES OF AMERICA; UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of United States Customs and Border Protection; JAMIESON GREER, in his official capacity as United States Trade Representative; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; HOWARD LUTNICK, in his official capacity as Secretary of Commerce,<br><br>Defendants. | Court No. 26-00134-RKE<br><br>Before: Richard K. Eaton, Judge |

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Standard Chambers Procedure 2(B)(2) of the United States Court of International Trade, the undersigned attorney for Plaintiff-Intervenor National Seafood Association, Inc. ("National Seafood" or "Plaintiffs") hereby certifies that this Motion for an Order Directing Refund of Invalidated IEEPA Duties on Type 03 Entries (the "Motion") complies with the relevant typeface and length limitations of the Court.

1. This brief complies with the word-count limitations because, according to the word-count function of the word-processing system used to prepare this brief, the document contains 8,754 words, excluding the parts of the brief exempted by the Rules.
2. This brief complies with the typeface requirements because it has been prepared in a proportionally spaced typeface, Times New Roman, in 12-point font.

Dated: October 19, 2026

Respectfully submitted,

/s/ Ashley Akers

Ashley Akers
HOLLAND & KNIGHT LLP
800 17th Street, NW, Suite 1100
Washington, DC 20006
Tel. (202) 441-5870
Ashley.akers@hklaw.com

*Counsel for Plaintiff-Intervenor*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

ADITYA BIRLA CHEMICALS USA INC. and PACK PERFECT INC.

Plaintiffs,

and

THE NATIONAL SEAFOOD ASSOCIATION,

Plaintiff-Intervenor,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; EXECUTIVE OFFICE OF THE PRESIDENT; the UNITED STATES OF AMERICA; UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of United States Customs and Border Protection; JAMIESON GREER, in his official capacity as United States Trade Representative; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; HOWARD LUTNICK, in his official capacity as Secretary of Commerce,

Defendants.

Court No. 26-00134-RKE

Before: Richard K. Eaton, Judge

**ORDER**

Upon consideration of Plaintiff-Intervenor National Seafood Association, Inc.'s ("National Seafood" or "Plaintiff-Intervenor") Motion for an Order Directing Refund of Invalidated IEEPA Duties on Type 03 Entries (the "Motion") and upon all other papers and proceedings reviewed herein, it is hereby

**ORDERED** that Plaintiff-Intervenor's Motion is **GRANTED,** and it is further

**ORDERED** that, within 30 days of the date of this Order, the United States shall refund the duties imposed under the International Emergency Economic Powers Act ("IEEPA") on affected Type 03 entries (the "IEEPA Component"); and it is further

**ORDERED** and **DECLARED**, pursuant to 28 U.S.C. §§ 2643(c)(1) and 1585, that U.S. Customs and Border Protection may not withhold the IEEPA Component of Type 03 entries pending AD/CVD liquidation, that Type 03 entries fall within the existing obligations set forth in this Court's IEEPA refund orders, and that this Order provides U.S. Customs and Border Protection the authority to issue those refunds.

**SO ORDERED.**

____________________________
Richard K. Eaton, Judge

Dated: _______________, 2026
New York, New York